**IDAHO FARM BUREAU FEDERATION,** a non-profit corporation; Owyhee County Farm Bureau, a non-profit corporation; Idaho Cattle Association, a non-profit corporation; Owyhee County Cattlemen's Association, a non-profit corporation, and Owyhee County Board of Commissioners, Plaintiffs,

v.

Bruce **BABBITT,** Secretary of Interior; John F. Turner, Director, U.S. Fish & Wildlife Service; Marvin Plenert, Regional Director, U.S. Fish & Wildlife Service; Charles Lobdell, Field Supervisor, Boise District Office, U.S. Fish and Wildlife Service; U.S. Fish & Wildlife Service; United States of America, Defendants.

Idaho Conservation League, Inc., an Idaho non-profit corporation, and Committee for Idaho's High Desert, Inc., an Idaho non-profit corporation, Intervenors.

Civ. No. 93–0168–E–HLR.

United States District Court,
D. Idaho.

Dec. 14, 1993.

Scott L. Campbell, Gary G. Allen, Susan E. Buxton, Davis Wright Tremaine, Boise, ID, John J. Rademacher, Richard Krause, Amer-ican Farm Bureau Federation, Park Ridge, IL, for plaintiffs.

John L. Marshall, Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

Laird J. Lucas, Land & Water Fund of the Rockies, Boise, ID, for intervenors Id. Cons. League & Committee for Idaho's High Desert.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

RYAN, Senior District Judge.

### I. FACTS AND PROCEDURE

On May 7, 1993, the plaintiffs in the above-entitled action filed a Complaint for Declaratory and Injunctive Relief against the United States Fish and Wildlife Service and other federal agencies and officers (hereinafter collectively "the F & W Service" or "the defendants"). The complaint alleges violations of the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, *et seq.*, with respect to the listing of the Bruneau Hot Springsnail (hereinafter "springsnail") under the Endangered Species Act.

Now before the court are cross-motions for summary judgment filed by the plaintiffs and the defendants on October 8, 1993. These motions have been fully briefed, and the court held a hearing on December 2, 1993. The court has carefully reviewed the memoranda filed by the parties, the cases cited therein, the arguments of counsel made at the hearing, as well as the pertinent portions of the administrative record filed with the court. Therefore, the cross-motions for summary judgment are now ripe for decision.

Briefly, the facts of the case are as follows.[1] The springsnail is a species of very small snails (4mm in diameter) first collected and identified as a distinct species in 1952 and 1953. Thus far, the species has been found only in thermal springs along the Bruneau River and a tributary, Hot Creek, in Owyhee County in southwest Idaho. At

---

1. The following discussion of the facts is based largely on the statements of undisputed facts submitted by the parties, which the court has supplemented through reference to the administrative record.

present it appears that the efforts on the part of the F & W Service and others to find the springsnail in other areas outside the identified habitat have been unsuccessful.

In early 1987, officials of the United States Bureau of Land Management ("BLM") searched potential habitat areas outside of the Hot Creek/Bruneau River area. BLM and F & W Service employees conducted tests at other hot springs in southwest Idaho, parts of northern Nevada, and southeastern Oregon. No populations of the springsnail were found in these other areas at that time. *See* 7 Administrative Record § III.F.28 (filed July 16, 1993), Brunner Letter dated Jan. 28, 1987.

Other researchers have described unsuccessful efforts to locate the springsnail outside the Hot Creek/Bruneau River area. *See* 4 Adm.R. § III.A.6 at 811 n. 1 (July 16, 1993), Hershler Article, Dec. 9, 1990, and 4 Adm.R. § III.A.8 at 68 (July 16, 1993), Mladenka Article, May of 1992. Nevertheless, the F & W Service appears to concede that not all possible habitat areas and/or springsnail populations have necessarily been located.

On August 21, 1985, the F & W Service published a proposal to list the springsnail as an endangered species. *See* 50 Fed.Reg. 33,803 (Aug. 21, 1985).[2] At that time, there were only two known populations or colonies of springsnail found in two locations in the Hot Creek/Bruneau River area. In its notice proposing the listing, the F & W Service identified the "reduction of ... habitat by reduced spring flows caused by drawdown of the water table by ground water pumping for agricultural and other uses" as the primary threat to the continued existence of this minute species of snail. *Id.* The proposed rule provided for 60 days, from August 21, 1985, through October 21, 1985, for public comment on the proposed listing. The F & W Service also published a summary notice of the proposal in a newspaper serving the

southwest region of Idaho. Thereafter, the F & W Service held a public hearing on the proposed listing in Boise, Idaho, on December 10, 1985.

In order to include the date of the public hearing, the F & W Service reopened the public comment period from October 31, 1985, through December 31, 1985. *See* 50 Fed.Reg. 45,443 (Oct. 31, 1985).[3] A second public hearing was held in Owyhee County in the town of Bruneau, Idaho, on January 15, 1986. The F & W Service then provided additional opportunity for public input by again extending the public comment period through February 1, 1986. *See* 50 Fed.Reg. 51,894 (Dec. 20, 1985).[4]

The F & W Service announced in 1986 that substantial disagreement existed in the evidence regarding the status of the springsnail and extended the period of consideration of the proposed rule for six months, pursuant to Section 4(b)(6)(B)(i) of the Endangered Species Act, 16 U.S.C. § 1533(b)(6)(A)(i)(III) and (b)(6)(B)(i). *See* 51 Fed.Reg. 47,033 (Dec. 30, 1986).[5] The F & W Service then set another period for public comment from December 30, 1986, through February 6, 1987.

By letter dated February 23, 1988, the United States Senators for Idaho wrote to the Director of the F & W Service, asking that he not proceed with the listing of the springsnail until the matter was studied further. The senators expressed their concern about the potentially significant impacts which listing the species could have on the agricultural communities in the area, and expressed their hope that the springsnail could be adequately protected without a formal listing under the Endangered Species Act.[6]

The F & W Service agreed to delay the decision, but reserved the right to take emergency action if necessary to protect the species.[7] Thereafter, Congress provided the F & W Service with funds for additional studies

---

2. *See* 1 Adm.R. § I.C.1 (July 16, 1993).

3. *See* 1 Adm.R. § I.B.5 (July 16, 1993).

4. *See* 1 Adm.R. § I.B.4 (July 16, 1993).

5. *See* 1 Adm.R. § I.B.3 (July 16, 1993).

6. *See* 2 Adm.R. § II.H.10 (July 16, 1993).

7. *See* 2 Adm.R. § II.H.11 (July 16, 1993), Dunkle Letter, April 6, 1988.

to be undertaken in an effort to develop a conservation plan for the species short of a formal listing under the Endangered Species Act.

One of the studies, conducted by Idaho State University and completed in May of 1992, found 126 new populations or colonies of the springsnail. Another study, conducted by the United States Geological Survey ("USGS") and completed in November of 1992 (hereinafter "USGS provisional report"), analyzed the hydrology of the geothermal system and surrounding hot springs in the Bruneau River valley to determine the cause of declining spring flows affecting the springsnail. A third study, conducted by the Idaho Department of Water Resources ("IDWR") and completed in November of 1992,[8] was undertaken to provide a comprehensive data base from which to make management decisions, consider alternatives, and predict impacts on the aquifer system. The IDWR is the state agency charged with administering water rights in the State of Idaho. The IDWR ultimately recommended that the springsnail not be listed as endangered under the Endangered Species Act. See 1 Adm.R. § II.A.44 (July 16, 1993), Official Comments of the Idaho Department of Water Resources dated Dec. 28, 1992.

By 1992, the F & W Service had still not taken final action with respect to the proposed listing. The F & W Service represents that during the time the additional studies were conducted, Indian Bathtub Spring, the site of the original discovery of the springsnail, had dried up. Whether or not there is now water flowing from Indian Bathtub Spring is in dispute.

In July of 1992, the intervenors in the present action filed suit against the F & W Service, pursuant to 16 U.S.C. § 1540(g), to compel a final ruling on the proposed listing. See Idaho Conservation League v. Lujan, Civil No. 92–260–S–HLR (D.Idaho July 6, 1992). On November 24, 1992, this court approved a settlement in that action. Pursuant to the stipulated settlement, the F & W Service committed itself to rendering a final decision on the springsnail by January 15, 1993.

After that previous suit had been filed and after the studies described above were completed, the F & W Service set another public comment period from October 5, 1992, through November 4, 1992. See 57 Fed.Reg. 45,762 (Oct. 5, 1992).[9] It appears that through inadvertence on the part of either the F & W Service or the local newspaper, the notice of the fifth comment period was not published in the newspaper until November 6, 1992, two days after the close of the proposed comment period. Therefore, the F & W Service provided another brief public comment period from December 18, 1992, through December 28, 1992, which was announced in the Federal Register and the local newspaper. See 57 Fed.Reg. 60,160 (Dec. 18, 1992).[10]

On December 9, 1992, the Field Supervisor for the F & W Service Boise Field Office, Charles H. Lobdell, sent a draft of the final rule listing the springsnail as endangered to the Regional Director of the F & W Service.[11] The last public comment period closed on December 28, 1992. The F & W Service issued its final rule listing the springsnail as an endangered species on January 25, 1993. See 58 Fed.Reg. 5938 (Jan. 25, 1993).[12] At the time the final rule was issued, the springsnail was known to exist in a total of 128 locations. The final rule was issued seven and a half years after the F & W Service first proposed the listing on August 21, 1985, based on only two known springsnail colonies.

The stated basis for the decision to list the springsnail is that known populations are at risk due to declining water levels in the underlying aquifer. The USGS provisional report was cited extensively by the F & W Service in support of its determination that groundwater levels in the area are declining. The USGS provisional report was not final or

8. See 4 Adm.R. § III.A.7 (July 16, 1993).

9. See 1 Adm.R. § I.B.2 (July 16, 1993).

10. See 1 Adm.R. § I.B.1 (July 16, 1993).

11. See 3 Adm.R. § II.H.52 (July 16, 1993), Lobdell Mem., Dec. 9, 1992.

12. See 1 Adm.R. § I.A.1 (July 16, 1993).

available for public review at the time of the listing of the springsnail on January 25, 1993. IDWR later discovered a computational error in the USGS provisional report regarding the recharge calculation of the geothermal aquifer. The errors were discovered and resulting modifications were made after the listing of the springsnail on January 25, 1993.

## II. ANALYSIS

### A. The Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[13]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine,"

must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

### B. Pending Motions for Summary Judgment

Judicial review of administrative decisions and actions taken pursuant to the Endangered Species Act is controlled by Section 706 of the APA. The APA empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C.S. § 706(2)(A) (Law. Co-op.1989).

Under section 706, the reviewing court must satisfy itself that agency decisions are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." ... The relevant inquiry is whether the agency "'considered the relevant factors and articulated a rational con-

---

13. *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

nection between the facts found and the choice made.' "

*Pyramid Lake Paiute Tribe v. United States Dep't of Navy*, 898 F.2d 1410, 1414 (9th Cir.1990) (citations omitted).

The plaintiffs' Complaint for Declaratory and Injunctive Relief sets forth nine claims for relief. These claims fall into two general categories: (1) procedural and/or due process violations on the part of the defendants; and (2) challenges to the scientific and factual basis of the final decision to list the springsnail as endangered.

The court has conducted an exhaustive and detailed review of the entire record in this matter. The relevant facts are contained in the administrative record and are not in dispute. Accordingly, this matter is ripe for summary judgment on the legal significance of the undisputed facts. Based on the discussion to follow, the court will enter summary judgment in favor of the plaintiffs on certain of their claims. The court will first address the procedural and due process claims raised by the plaintiffs. The court will then address the plaintiffs' challenges to the scientific and factual basis of the final decision to list the springsnail as endangered.

### 1. Procedural and due process violations.

#### (a) Delay in issuing final rule.

In their first three claims for relief, the plaintiffs contend that the final rule listing the springsnail is invalid because the F & W Service failed to take action within 18 months of the initial proposal to list the species, in violation of provisions of the Endangered Species Act and the APA. Specifically, the plaintiffs contend that the F & W Service failed to issue its final rule, make a finding that the listing should not be made, or withdraw the listing proposal within 18 months as required by the Endangered Species Act. The plaintiffs further contend that the failure to act within the required time period, combined with the solicitation of additional studies and participation in a multi-agency cooperative conservation plan intended to eliminate the need to list the springsnail, constituted a de facto withdrawal by the F & W Service of its proposal to list the species.

The parties agree that the Endangered Species Act imposes strict deadlines for taking action on a proposal to list a species. The Act requires that, within one year of publication of the proposal, the Secretary of the F & W Service must either promulgate a final rule formally listing the species as endangered, formally extend the one-year period by six months, or withdraw the proposed regulation. *See* 16 U.S.C. § 1533(b)(6)(A) and –(B). The following statutory provisions are of particular significance in this case and are now set forth in their entirety.

(i) If the Secretary finds with respect to a proposed regulation referred to in subparagraph (A)(i) that there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned, the Secretary may extend the one-year period specified in subparagraph (A) for *not more than six months* for purposes of *soliciting additional data.*

(ii) If a proposed regulation referred to in subparagraph (A)(i) is not promulgated as a final regulation within such one-year period (or longer period if extension under clause (i) applies) because the Secretary finds that there is not sufficient evidence to justify the action proposed by the regulation, *the Secretary shall immediately withdraw the regulation.* The finding on which a withdrawal is based shall be subject to judicial review. The Secretary may not propose a regulation that has previously been withdrawn under this clause unless he determines that sufficient new information is available to warrant such proposal.

16 U.S.C.S. § 1533(b)(6)(B)(i) and –(ii) (Law. Co-op.1984).

The F & W Service argues that nothing in the foregoing language suggests that failure to publish a final rule within the time period set by the statute requires withdrawal of the proposal. The F & W Service goes on to argue:

There is no authority for the proposition ... that failure to take action effects a substantive decision that the information available is insufficient to list the species. In other words, Congress intended the timetable in section 4(b)(6)(A) to be action

forcing, rather than a bar to action taken outside the timetable which [is] necessary for the protection and conservation of a threatened species.

Federal Defs.' Mem.Supp.Cross Mot. Summ.J., at 7–8 (filed Oct. 8, 1993) (footnote omitted).

The parties have not cited, nor has the court been able to locate, any published authority on the question of the proper status of a listing proposal which is neither acted upon nor withdrawn within the time frame established by the Endangered Species Act. There is no clear authority to support the plaintiffs' contention that the failure of the agency to act results in a de facto withdrawal of the proposal. Yet, there is a corresponding lack of authority to support the claim by the F & W Service that the time frame is open-ended. From the F & W Service perspective, a proposal can be made and then subjected to protracted study and/or allowed to languish for as much as seven and a half years before final action is taken.

Important policy considerations can be identified on both sides of this issue. It is clear that the deadlines are intended to force the Secretary to take timely action to protect a species threatened with imminent extinction. This is necessary to ensure that a species does not perish simply because the listing decision is delayed for too long. On the other hand, and as so aptly illustrated by the case at hand, a proposal to list a species can have a traumatic and potentially devastating impact on citizens in affected areas. Here, the proposal to list the springsnail threatens the way of life of the citizens and agricultural communities of a large area in southwest Idaho. If the water rights of the farmers and ranchers are lost or diminished, the value of their lands will also be lost or diminished.

The court can certainly understand the need to list a species as endangered even when it takes more than 18 months to develop sufficient evidence to support such a deci-

sion. Yet, at the same time, the court understands the need for individuals and communities to have a timely decision on a proposal to list, one way or the other. A timely decision enables affected individuals and communities to avoid years of uncertainty and apprehension caused by the threatened agency action.

■■■ After carefully weighing these concerns, the court is of the opinion that a literal reading of the statute makes the better rule. Thus, as the statute clearly indicates, the court holds that once a proposal is made to list a species as threatened or endangered, the Secretary must, within one year of publication of the proposal, either promulgate a final rule listing the species, formally extend the one-year period by six months, or withdraw the proposed regulation. *See* 16 U.S.C. § 1533(b)(6)(A) and (B). If a proposed listing is not promulgated as a final regulation within the one-year period (or 18 months if an extension is declared), the proper course is for the Secretary to make a finding that there is insufficient evidence at that time to justify a listing, and *immediately withdraw the regulation.* 16 U.S.C. § 1533(b)(6)(B)(ii). If and when sufficient evidence is developed, the Secretary is free to again propose the species for listing, simply by making a finding that sufficient new information is available to warrant a new proposal to list the given species. *Id.*

■■■ While the court approves of the efforts of the agency to solicit additional information and to provide various opportunities for public comment, the court cannot conclude that the listing process should operate or was intended to operate in the manner which it has in the case at hand. The court is aware that the plaintiffs could have initiated a citizen suit, pursuant to 16 U.S.C. § 1540(g),[14] to compel the Secretary to make a final decision on the listing proposal. Nevertheless, based on the preceding discussion and conclusions, the court finds that the Endangered Species Act clearly requires action to be taken within express time limits. The

14. The relevant provisions of 16 U.S.C. § 1540(g) provide as follows:

Citizen suits.... Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf ...

against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 4 [16 USCS § 1533] which is not discretionary with the Secretary.

16 U.S.C.S. § 1540(g)(1)(C) (Law.Co-op.1984).

agency must give full force and effect to the statute as enacted by Congress. Therefore, the court further finds that it was arbitrary and capricious for the F & W Service to wait seven and a half years after the initial proposal before issuing its final rule listing the springsnail as endangered.[15] Furthermore, the final rule differed significantly from the initial listing proposal which covered a much smaller area and was based on only two known springsnail colonies.

■ Lastly, as noted above, the F & W Service and the intervenors entered into a stipulated settlement in *Idaho Conservation League v. Lujan,* Civil No. 92–260–S–HLR (D.Idaho July 6, 1992), in which the F & W Service committed itself to making a final decision on the listing proposal by January 15, 1993. Yet, the court now holds that it was arbitrary and capricious for the F & W Service to fail to issue a final rule or withdraw the proposal within the time limit established under the Act. The prior agreement between the F & W Service and the intervenors has no effect on the court's present decision.

(b) *Failure to publish new notice and proposed rule.*

In their fourth claim for relief, the plaintiffs cite 16 U.S.C. § 1533(b)(5)(A), which requires the Secretary to publish a general notice and the complete text of the proposed rule in the Federal Register at least 90 days prior to the effective date of any regulation. The plaintiffs have argued that the F & W Service's failure to act within the requisite time period constituted a de facto withdrawal of the proposal to list the springsnail. Thus, in their fourth claim for relief, the plaintiffs contend that the F & W Service violated the Endangered Species Act and the APA by failing to publish a new notice and proposed rule after the original proposal was de facto withdrawn.

As noted above, the court is not persuaded by the plaintiffs' argument that the initial proposal was de facto withdrawn. Therefore, the court finds that the F & W Service is entitled to summary judgment on the plaintiffs' fourth claim for relief.

(c) *Failure to provide actual notice to county.*

■ It is undisputed that the F & W Service never provided the Owyhee County Commission with actual notice of the proposal to list the springsnail as endangered. It is also undisputed that the Endangered Species Act required the F & W Service to provide actual notice to the county commission.[16] The F & W Service points out that at least one county commissioner, Don Davis, had notice because he testified at two public hearings in 1985 and 1986. In addition, the F & W Service argues that any claim based on failure to provide actual notice to the Owyhee County Commission is barred by the general six-year statute of limitations for actions against the federal government, 28 U.S.C. § 2401(a), which has been held to apply to APA actions. *See Wind River Mining Corp. v. United States,* 946 F.2d 710, 712–14 (9th Cir.1991).

15. The court is not persuaded by the plaintiffs' contention that the failure of the Secretary to act within the requisite time period constituted a de facto withdrawal of the listing proposal. Such a conclusion is not supported by the statute. The withdrawal of a proposed listing must be done affirmatively, accompanied by a finding that there is insufficient evidence to support a listing at that time. Such a finding can then be subject to judicial review if necessary. Rather than adopt the position taken by the plaintiffs, the court, as stated above, is of the opinion that it is simply arbitrary, capricious, and otherwise not in accordance with the law for the Secretary to fail to issue a final rule or withdraw the proposed rule within the time frame established by the Endangered Species Act.

16. The pertinent statutory provision provides as follows:

> With respect to any regulation proposed by the Secretary to implement a determination, designation, or revision referred to in subsection (a)(1) or (3), the Secretary shall ... not less than 90 days before the effective date of the regulation ... give *actual notice* of the proposed regulation (including the complete text of the regulation) to the State agency in each State in which the species is believed to occur, and to each *county* or equivalent jurisdiction in which the species is believed to occur, and *invite the comment of such agency, and each such jurisdiction,* thereon....

16 U.S.C.S. § 1533(b)(5)(A)(ii) (Law.Co-op.1984) (emphasis added).

The fact that one commissioner ultimately had individual notice does not excuse the F & W Service from failing to comply with its mandatory duty to provide actual notice to the county commission in the manner and within the time dictated by the Endangered Species Act. Furthermore, the court sees no need to resolve the statute of limitations issue raised by the F & W Service. Rather, the court will simply list this breach of duty as one among many of the procedural due process violations committed by the F & W Service in this case.

(d) *Failure to allow public review of critical data.*

██ The plaintiffs also claim that the F & W Service failed to make critical data available during the public comment period. Specifically, the plaintiffs charge that the USGS provisional report was not available to the public, and that the F & W Service failed to disclose the precise location of the additional 126 colonies of springsnail found after the initial listing proposal had been made. It is clear that the USGS provisional report played a key role in the F & W Service's decision to list the springsnail as endangered. The final rule relies heavily on the conclusions contained in the report, which it cites 11 times.

Leland L. Mink is an expert in the area of geothermal aquifers. Dr. Mink has studied the Bruneau/Grand View geothermal aquifer extensively and has followed the proposal to list the springsnail. In his official comments to the F & W Service, dated December 28, 1992, Dr. Mink expressed his belief that there was insufficient information to list the springsnail. He also informed the F & W Service that he found it difficult to comment on the listing proposal without access to the critical USGS provisional report.

> My first comment is concern over responding about the listing without the opportunity to review the hydrogeologic information being used to justify the listing. I understand this information is not available which leads me to ask how a listing can be made. How does the agency expect scientific comment without the technical information to respond to?
>
> . . . .
>
> Again I find it very difficult to respond with comments when the information I am most capable of commenting on has not been released. As a professional hydrogeologist with considerable experience in geothermal systems, I am disturbed that the Fish and Wildlife Service has not made available the USGS hydrologic study of the area to other professionals prior to closing the comment period. I am hopeful it is an accurate and complete study but must state that I have discovered some concepts about the geothermal system in the Bruneau/Grandview area which do not follow earlier published information about the system.

See 1 Adm.R. § II.A.41 at 1, 3 (July 16, 1993), Mink Letter, Dec. 28, 1993. Counsel for the plaintiffs also asked to see the USGS provisional report and was told it could not be released. In their comments to the F & W Service on the proposed listing, the J.R. Simplot Company, doing business as Grandview Farms; the National Cattlemen's Association; Mr. Quey Johns; Mr. George Turner; and Mr. Walter Mills all expressed their desire to check the assumptions and calculations in the USGS provisional report.[17] All of these groups and individuals expressed their frustration over not being able to review the USGS provisional report prior to submitting their comments to the agency.[18]

The court is of the opinion that it is arbitrary and capricious for the F & W Service to propose a species for listing under the Endangered Species Act, and then not allow the public to review the key scientific study serving as the basis for the proposed listing. The court finds the reasoning in the case cited by the plaintiffs, *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240 (2d Cir.1977), to be persuasive on this issue. In the context of rulemaking by the Food and Drug Administration, the Second Circuit Court of Appeals held as follows:

17. *See* 1 Adm.R. §§ II.A.38, –40, –45, –52, and – 53 (July 16, 1993).

18. *Id.*

When the basis for a proposed rule is a scientific decision, the scientific material which is believed to support the rule should be exposed to the view of interested parties for their comment. One cannot ask for comment on a scientific paper without allowing the participants to read the paper. Scientific research is sometimes rejected for diverse inadequacies of methodology; and statistical results are sometimes rebutted because of a lack of adequate gathering technique or of supportable extrapolation. Such is the stuff of scientific debate. To suppress meaningful comment by failure to disclose the basic data relied upon is akin to rejecting comment altogether.

*Id.* at 252.[19]

It is also undisputed that the F & W Service has never disclosed the precise location of the 126 additional colonies of springsnail which were discovered in the Idaho State University study. Such information would enable the public to assess F & W Service assumptions relating to the potential effects of aquifer decline on these colonies. Comment cannot be meaningful without information as to the altitude and the geological and hydrological conditions of each new location.

(e) *Failure to provide adequate opportunity for public comment.*

■ After the proposal lay dormant for several years, the F & W Service was sued by the intervenors in this action in July of 1992. As a result of that suit, the F & W Service committed itself to issuing a final rule on the proposal by January 15, 1993. By November of 1992, the new studies by Idaho State University and the IDWR, as well as the USGS provisional report, were all completed. In light of these new studies and the impending final decision to be made after years of inactivity by the F & W Service, the agency determined that a final comment period should be set. In a memo from the Acting Assistant Regional Director of the F & W Service, received in the Boise Field Office on October 13, 1992, it is clear that the agency knew its notice and comment duties. The Boise Field Office was instructed as follows: "A copy of the news release and *Federal Register* notice are attached for your information. *You should send copies of both to interested parties, including the media and local governments. You should also have a legal notice published in the local paper.*" 2 Adm.R. § I.H.2 (July 16, 1993) (emphasis added). The F & W Service set a period for public comment from October 5, 1992, through November 4, 1992. *See* 57 Fed.Reg. 45,762 (Oct. 5, 1992).[20] However, despite clear instructions from the Regional Office in Portland, Oregon, notice of this final comment period was not published in the local newspaper until November 6, 1992, two days *after* the comment period had closed, nor was notice sent to the Owyhee County Commission.

It is clear that the plaintiffs and the other residents in the Bruneau area, as well as other interested parties following the listing process, had come to rely on notice in the local newspaper for information regarding action on the springsnail. Consequently, the F & W Service received only four comments from the public during the 30–day period from October 5, 1992, through November 4, 1992. Because of the failure to publish and give notice, as required by the Endangered Species Act and as instructed by letter from the Regional Office, the F & W Service provided another brief public comment period from December 18, 1992, through December 28, 1992, which was announced in the Federal Register, 57 Fed.Reg. 60,160 (Dec. 18, 1992),[21] and the local newspaper either the day before or the actual opening day of the comment period.

---

**19.** *See also Connecticut Light & Power Co. v. Nuclear Regulatory Comm'n*, 673 F.2d 525, 531 (D.C.Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982) (agency has duty to identify and make available technical studies and data it has employed in reaching decision to propose particular rules); *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 393–93 (D.C.Cir. 1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974) (agency cannot promulgate rules based on data known only to the agency).

**20.** *See* 1 Adm.R. § I.B.2 (July 16, 1993).

**21.** *See* 1 Adm.R. § I.B.1 (July 16, 1993).

Thus, the public effectively had only ten days, over the Christmas holiday, to comment on the impending listing decision. The court is of the opinion that it was arbitrary and capricious for the F & W Service to provide such a brief period for public comment at this critical stage. This is especially true given the fact that the F & W Service withheld important new information and the USGS provisional report from public view at that time.[22]

(f) *Failure to respond to and consider public comments.*

■ The plaintiffs next charge that the F & W Service failed to consider and/or respond to substantive comments from the public. It is undisputed that Charles H. Lobdell, the Field Supervisor for the Boise Field Office of the F & W Service, sent his final draft of the rule listing the springsnail as endangered to the Regional Director of the F & W Service on December 9, 1992.[23] Thus, the rule was drafted and headed toward publication nine days *before* the public comment period *opened* on December 18, 1992. The final rule was drafted and sent without due consideration of or response to the 62 comments received from the public in the final comment period. The comments came from a wide range of sources and were for the most part critical of the proposal to list the species.

Under Section 553 of the APA, 5 U.S.C. § 553(c),[24] the F & W Service was required to consider and respond to all relevant comments, and then incorporate a concise general statement of the final rule's basis and purpose. Courts have interpreted the "basis and purpose" requirement to mean that the agency must address and, if necessary, rebut significant comments made regarding the proposed rule. "[T]he opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 35–36 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). "[A]n agency decision may not be reasoned if the agency ignores vital comments regarding relevant factors, rather than providing an adequate rebuttal." *Western Coal Traffic League v. United States*, 677 F.2d 915, 927 (D.C.Cir.), *cert. denied*, 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982). "Basis and purpose statements must enable the reviewing court to see the objections and why the agency reacted to them as it did.... Additionally, an agency should rebut vital relevant comments." *Lloyd Noland Hosp. v. Heckler*, 762 F.2d 1561, 1566–67 (11th Cir. 1985).

Of the comments received by the F & W Service in December of 1992, two stand out: the comments of the IDWR and those of Leland L. Mink. As noted above, the IDWR conducted a comprehensive study of the aquifer system in the area.[25] In its comments, the IDWR noted that it had found, as did Idaho State University in its study, that the

---

**22.** The court realizes that ordinarily the Endangered Species Act requires only a single period for public comment. However, the court must consider the following facts: (1) the F & W Service failed to act on its proposal within the time set by statute; (2) the initial proposal was followed by several years of inaction on the part of the F & W Service; (3) during the intervening years, significant new scientific information came to light, including the discovery of 126 additional colonies of springsnail where previously it was thought that only two colonies existed; and (4) the F & W Service itself determined that a final public comment period was necessary. Under these circumstances, the court is of the opinion that the F & W Service was required to provide an adequate opportunity for the public to comment on the revived proposal to list the springsnail as endangered. Furthermore, in keeping with the dictates of the Endangered Species Act, the F & W Service was also required to consider the public comments and respond to certain of the comments where appropriate.

**23.** *See* 3 Adm.R. § II.H.52 (July 16, 1993), Lobdell Mem., Dec. 9, 1992.

**24.** After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.... 5 U.S.C.S. § 553(c) (Law. Co-op.1989).

**25.** The 145–page report, entitled *Analysis of Management Alternatives and Potential Impacts on Ground–Water Development Due to Proposed Endangered Species Classification of the Bruneau Hot Springs Snail*, was completed in October of 1992. *See* 4 Adm.R. § III.A.7 (July 16, 1993).

springsnail exists in many more locations than the two identified when the listing was first proposed. IDWR then commented as follows:

> There is no evidence available indicating that ground-water pumping in the valley uniformly affects every one of the 125 plus BHSS habitat locations. IDWR is concerned that USFWS may be basing its decision to list the BHSS upon a series of unproven assumptions about the hydrology of the hot water aquifer in the area. There is not sufficient evidence to justify the assumption by the USFWS that the decline in water levels provides adequate scientific proof that all or a critical amount of the BHSS habitat is threatened or endangered. To make such an assumption it would be necessary to show that the withdrawals in the aquifer exceed the recharge and that an equilibrium level cannot be reached. There is no evidence to support this conclusion. The lack of adequate data and information to reach that conclusion is the primary reason the United States Geological Survey (USGS) was unable to structure a computer model of the area. The "Water Budget" assumptions made by the USGS and reported in the IDWR study cannot be used to justify such an action. A change of only one-half of one percent in one of the factors (For example: annual precipitation) is sufficient to eradicate the USGS assumption of an overdraft.

1 Adm.R. § II.A.44 (July 16, 1993), *Official Comments of the Idaho Department of Water Resources,* at 2–3, Dec. 28, 1992.

The IDWR also expressed its concerns about the procedural defects in the listing process being administered by the F & W Service. IDWR was most concerned by the fact that the primary basis for the proposed listing, the USGS provisional report, was not in final form and was not available for the public to review and analyze. IDWR was also concerned that only one-day notice of the final comment period was given, and that the ten days for comment was inadequate for meaningful public participation at that important stage in the rulemaking process. *Id.* at 3–4.

Dr. Mink also raised serious questions regarding the scientific basis for the proposed listing. *See* 1 Adm.R. § II.A.41 (July 16, 1993), Mink Letter, Dec. 28, 1993. Dr. Mink's concerns included the following: (1) inability to review the USGS provisional report serving as the key basis for the proposed listing; (2) lack of scientific evidence to justify the proposed listing, including the lack of hydrologic data on the springs where the 126 new colonies of springsnail had been located, and insufficient study of the other possible reasons for flow changes in the area; (3) failure to consider the effects of the continuing drought in the region on water flows; (4) serious questions existed regarding the assumption by the F & W Service that the water system in the area is a single aquifer which reacts as a homogenous permeable system; and (5) insufficient evidence on the range of the habitat of the springsnail and the true distribution of the species.

The court has reviewed the final rule published by the F & W Service in the Federal Register on January 25, 1993, including the section addressing the comments received from the public during the listing process. The F & W Service responses to the comments rely heavily on the USGS provisional report, which was not released to the public and which was later found to be seriously flawed in its recharge calculations. In addition, the final rule was drafted and sent before the last comment period had even opened. Based on these facts, and a careful review of the responses from the agency, the court is persuaded that the F & W Service failed to consider and respond adequately to the comments received from the public from December 18 through December 28, 1993. While the responses contained in the final rule arguably speak to these comments, the court finds that the responses were triggered largely by comments received earlier in the process, and/or represent self-serving and superficial responses from an agency that had already made up its mind.

Had the agency responded properly to the comments received, the final decision may have been different. The agency may have decided to list the species as threatened rather than endangered. Or, the agency may have decided not to list the species at all. Yet, as it turned out, the actions of the F &

W Service effectively nullified the final and most critical public comment period.[26]

### 2. Challenges to the scientific and factual basis of the final decision to list the springsnail as endangered.

In their seventh and eighth claims, the plaintiffs challenge the scientific and factual basis of the final decision to list the springsnail as endangered. The plaintiffs have made the following allegations: (1) there is insufficient data to support the conclusion that groundwater pumping or declining spring flows pose a threat to the springsnail; (2) the single aquifer assumption is not supported by the facts, and, even if there is a single aquifer, the water levels in all parts of the aquifer cannot be predicted based on data from only one part; (3) the record does not support the conclusion that the aquifer continues to decline due to agricultural pumping; (4) the record does not support the conclusion that spring flows have declined throughout the springsnail habitat; (5) the premise that springsnail populations are declining is not supported by the record; (6) the record does not support the premise that the springsnail has a limited range of habitat; and (7) the record does not support the conclusion that grazing, predation, or recreation threatens the springsnail.

 The court has carefully reviewed the record in this matter in light of the plaintiffs' contentions. However, it is not for this court to weigh the scientific evidence and decide whether or not the springsnail is endangered. Rather, the role of the court is simply to ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made. See Pyramid Lake Paiute Tribe v. United States Dep't of Navy, 898 F.2d at 1414.

The court finds that the plaintiffs have raised serious questions regarding the basis of the F & W Service decision to list the springsnail as endangered. The court also believes that had the F & W Service correctly followed the procedures set by the Endangered Species Act, these important questions would have been properly addressed and may have affected the final decision by the agency. However, the court is not prepared to declare as a matter of law that the decision to list the springsnail had no rational basis in scientific fact. Although the court does not believe that the agency considered all of the necessary factors, the court finds that the F & W Service articulated a rational connection between the factors identified and the choice made.

### 3. Summary.

In light of the serious due process violations committed by the F & W Service, the court holds unlawful and sets aside the F & W Service final decision to list the springsnail as an endangered species under the Endangered Species Act. Pursuant to 5 U.S.C. § 706(2)(A), the court finds the final rule to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

### III. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the plaintiffs' Motion for Summary Judgment, filed October 8, 1993, should be, and is hereby, GRANTED in part and DENIED in part. The motion is granted in that the court has determined that the defendants committed serious due process violations which caused the final rule listing the Bruneau Hot Springsnail as an endangered species to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The final rule is unlawful and is hereby set aside. The plaintiffs' motion is denied in all other respects.

IT IS FURTHER ORDERED that the Federal Defendants' Cross Motion for Summary Judgment, also filed October 8, 1993, should be, and is hereby GRANTED in part and DENIED in part. The motion is denied with respect to the due process violations described in this order. The motion is granted in all other respects.

---

**26.** The plaintiffs also complain that the F & W Service failed to submit a written justification to the IDWR, pursuant to 16 U.S.C. § 1533(i), justifying the final rule which contradicted the analysis and recommendations of the IDWR. However, the statute only requires such written justification to be submitted to a state agency defined as "any State agency which is responsible for the management and conservation of fish, plant, or wildlife resources within a State." 16 U.S.C.S. § 1532(18) (Law. Co-op.1984). The IDWR does not appear to fall within this definition.

IT IS FURTHER ORDERED that this action should be, and is hereby, DISMISSED.

## JUDGMENT

Based upon this court's Order on Cross-Motions for Summary Judgment, dated December 14, 1993, and the court being fully advised in the premises,

IT IS ORDERED AND ADJUDGED that judgment is hereby entered in favor of the plaintiffs in that the court declares the final rule listing the Bruneau Hot Springsnail as an endangered species, published by the United States Fish and Wildlife Service on January 25, 1993, 58 Fed.Reg. 5938 (Jan. 25, 1993), to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. The final rule is held to be unlawful and is hereby set aside.